UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Lyon Financial Services, Inc.,** | **Civil No. 06-4562 (PJS-JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **MBS Management Services, Inc., MBS Realty Investors, Ltd.,** | |
| Defendants, | |
| v. | |
| **American Business Machines, Inc.,** | |
| Third Party Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above matter came before the undersigned on July 31, 2007 on a motion to dismiss (Doc. No. 16) by third party defendant American Business Machines (ABM). Troy C. Kepler, Esq., appeared for plaintiff Lyon Financial Services (Lyon). V. John Ella, Esq., appeared for defendants MBS Management Services and MBS Realty Investors (collectively MBS). William C. Penwell, Esq., appeared for ABM. The motion is referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

**I.   BACKGROUND**

This dispute originates in four contracts where MBS leased photocopiers from ABM. ABM assigned these leases to Lyon, and at some point afterwards, MBS stopped making payments. Lyon

responded by bringing this action against MBS for breach of contract.[1] MBS then filed a third party complaint against ABM, with claims for fraud, rescission, breach of contract, unjust enrichment, and violation of the Minnesota Uniform Deceptive Trade Practices Act (DTPA).

ABM now moves to dismiss seven of the nine counts in the third party complaint for failure to state a claim. In the alternative, ABM seeks a more definite statement of the pleadings under Rule 12(e).

## II. DISCUSSION

### A. Standard of Review

#### 1. General Considerations

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim where the allegations in the complaint are so deficient that they provide no cause for relief. *Quinn v. Ocwen Federal Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006). When considering this question, a court shall only examine the pleadings, taking all reasonable inferences in favor of the nonmoving party. *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

This standard is a liberal one, and as some courts have noted, it must be beyond doubt that the plaintiff has no claim for relief. *See, e.g., Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). Nonetheless, the nonmoving party must still allege "sufficient facts, as opposed to mere conclusions, to

---

[1] The complaint names MBS Management Services and MBS Realty Investors as defendants. MBS Management Services allegedly executed the leases and MBS Realty Investors purportedly was a guarantor under some of the leases. Both entities are represented by the same counsel and, for the purposes of this motion, their interests are identical. In the factual narrative, references to MBS refer to MBS Management alone. Elsewhere in this report, MBS may include both defendants, even though it is described in the singular.

satisfy the legal requirements of the claim." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2006). So a court may ignore legal conclusions presented in the form of factual allegations. *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

### 2. Record on Review

Though MBS and ABM do not materially dispute the underlying standard of review, they do raise some concerns about the record properly before the court on a motion to dismiss for failure to state a claim. The general rule is that a court only examines the pleadings and matters incorporated by reference. *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007).

ABM argues it has another document that, though not attached to the third party complaint, may be examined here. MBS counters that ABM is attempting to convert the motion into one for summary judgment, and consequently it includes several additional documents with its own papers.

The document submitted by ABM is a letter, from MBS to ABM, dated February 10, 2006. The letter states that only two persons, Mary Gonzales and Michael Smuck, are authorized to enter equipment leases for MBS. The third party complaint describes this letter. Though the following discussion will show this letter is relevant, the allegations in the third party complaint sufficiently describe it. The letter itself does not need to be part of the record.

The documents submitted by MBS are four copies of the purported lease contracts at issue in this litigation. These copies depart in some respects from the lease contracts that Lyon attached to its complaint. MBS suggests these differences may signal that the lease contracts were either forged or inauthentic.

3

Where a document is not attached to a complaint, but it is "necessarily embraced" by the allegations in the complaint, it may be considered on a motion to dismiss for failure to state a claim. *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). Thus where the contents of a particular document are alleged in a complaint, and the authenticity of that document is not questioned, a court may properly consider it. *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003).

Because the February 10 letter is described in the third party complaint, it may be treated as part of the record on the motion to dismiss. But the alternate lease contracts are not mentioned in the third party complaint, and because they are not "necessarily embraced" by it, they may not be considered on the motion to dismiss. However, even if these documents were considered, they do not materially influence the following discussion.

**B.     Count I:  Rescission**

Turning to the merits, ABM begins by challenging MBS' suit for rescission. It argues that this count is founded on allegations of fraud and mistake, and because the third party complaint does not plead these matters with particularity as required by Rule 9(b), this count does not state a claim.

This argument is somewhat misleading, as this count does not rely exclusively on the theories of fraud and mistake. The count states in relevant part,

> 25.   As a result of fraud on the part of ABM or its agents or employees, or a mutual mistake by the parties, a number of contracts were signed by the parties pursuant to which no machine was actually delivered to MBS.
>
> 26.   All or some of the Lease Agreements were signed by [corporate representatives] of MBS who were not one of the two persons specifically authorized to sign such contracts.

This count, therefore, is not founded solely on fraud or mistake. It also alleges incapacity, based on allegations that a corporate representative was not authorized to execute contracts for MBS.

Minnesota law[2] provides that a party may bring suit for rescission on whatever grounds are recognized in equity.[3] *Liebsch v. Abbott*, 122 N.W.2d 578, 579 (Minn. 1963) (quoting *Knappen v. Freeman*, 50 N.W. 533, 534 (Minn. 1891)). Such grounds include that the contract is void because of unilateral mistake, *Gethsemane Lutheran Church v. Zacho*, 104 N.W.2d 645, 649 (Minn. 1960); that it is voidable for fraud in the inducement, *E.E. Atkinson & Co. v. Neisner Bros.*, 258 N.W. 151, 154 (Minn. 1935); or that it is voidable due to incapacity of a party, *Slingerland v. Slingerland*, 124 N.W. 19, 19 (Minn. 1910).

When examining the merits of MBS' suit for rescission, it is most useful to consider theories of fraud and mistake together, and then to give separate consideration to the theory of incapacity. Because these issues return in many of the subsequent counts, the following discussion will control those counts as well.

---

[2] The parties have not engaged in a choice of law analysis. It may seem suspicious that the lease contracts, originally executed by companies based in Texas and Louisiana, are controlled by Minnesota law. But the choice-of-law clauses in the lease contracts provide, "This Agreement shall be deemed fully executed and performed in the state of Owner or its Assignee's principal place of business and shall be governed by and construed in accordance with its laws." Because Lyons, the current assignee of the leases, has its principal place of business in Minnesota, the law of this state controls.

[3] Minnesota law also uses the term rescission to describe other circumstances. These include discharge of a contract by mutual agreement of the parties, *Abdallah, Inc. v. Martin*, 65 N.W.2d 641, 644 (Minn. 1954), or renunciation of a contract by one party following the other party's refusal to perform, *Liebsch v. Abbott*, 122 N.W.2d 578, 579 (Minn. 1954). In order to distinguish these concepts of rescission, some authorities suggest that when a contract is void or voidable, the proper remedy in equity is cancellation. *See* Richard A. Lord, *Williston on Contracts* § 75:3 (4th ed. 2005). But Minnesota case law does not make this distinction, and therefore, this discussion follows the same practice.

### 1. Fraud and Mistake

As noted beforehand, ABM argues that MBS has not adequately alleged fraud or mistake as required under Rule 9(b). The rule states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Interpreting this rule, Eighth Circuit authorities require a plaintiff to allege "such matters as the time, place, and contents of the false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." *Schaller Telephone Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (indirectly quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982)). Although Eighth Circuit decisions have not applied these standards in the context of mistake, it is reasonable to suggest that similar levels of detail are required.

Many decisions more concisely describe this standard as requiring the "who, what, where, when, and how" of the alleged fraud. *See, e.g., United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). If a party alleges that certain misrepresentations were made, but does not indicate what matters were false or how it relied on those misrepresentations, such allegations are not particularized enough to comply with the rule. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).

MBS argues for a more relaxed or liberal application of Rule 9(b). MBS relies in part on the Eighth Circuit decision of *Abels v. Farmers Commodity Corp.*, where the court stated that Rule 9(b) is consistent with notice pleading and only requires a "higher degree of notice." 259 F.3d 910, 920 (8th Cir. 2001).

Although MBS accurately quotes the decision, it omits to mention that the *Abels* court still required allegations that "enabl[e] the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct[.]" *Id.* The court then went on to recite the same standards described in the other cases noted above. *Abels* cannot be viewed, therefore, as relaxing those standards. *See id.* (quoting *Bennett*, 685 F.2d at 1062).

MBS also recites certain Seventh Circuit authorities. These authorities suggest that where a plaintiff lacks access to facts necessary to plead fraud or mistake, especially where those facts are under the control of another party, Rule 9(b) should not be applied as stringently. *See Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). Eighth Circuit authorities have not proposed a comparable rule.

The third party complaint offers few allegations about fraud or mistake. The pleading alleges that Brent Couture, who allegedly executed the leases on behalf of ABM, misrepresented himself as its chief financial officer. And it notes variances between the serial numbers of the photocopiers that were delivered and those described in the leases. It may be possible to view another allegation, ABM's purported failure to deliver one or more copiers, as some sort of fraudulent omission.[4]

Taking a permissive view, the allegations might be enough to describe the "who" or "what" of the fraud. But the third party complaint does not meaningfully answer the "how," the question of detrimental reliance.

---

[4] At the motion hearing, MBS mentioned another purported misrepresentation by ABM, that "leasing is superior to buying." This statement is not disclosed in the third party complaint and so it cannot be considered here.

MBS claims that it made several payments under the leases, and that these payments were excessive and unfair. It does not explain, however, *how* false or misleading representations by ABM led it to make excessive payments. *Cf. BJC Health Sys.*, 478 F.3d at 917.

MBS and ABM were engaged in an arm's-length commercial transaction, and there are no allegations that connect the fraud to ABM's decision to execute and perform the lease. If this Court assumes, solely for the sake of argument, that Couture had authority to execute the leases, this fact is still immaterial to the price that ABM itself agreed upon in those leases.

For these reasons, its claims of fraud and mistake are insufficient under Rule 9(b). To the extent that its suit for rescission is based on these theories, it does not state a claim and these matters may be dismissed.[5]

The result would be no different if the Seventh Circuit rule, as urged by MBS, were applied. That rule relaxes the pleading standards under Rule 9(b) where a party does not have access to the facts necessary to plead the fraud. But as the previous analysis indicates, the most notable defect in the third party complaint is the failure to plead reliance. Such facts are necessarily within MBS' own control.

---

[5] MBS also argues that, because ABM has pleaded ratification, a defense that recognizes the enforceability of the contract, ABM waives the right to challenge whether fraud is alleged with particularity under Rule 9(b). As will be noted later, Rule 8(e)(2) allows a party to assert as many claims or defenses as are available, regardless of whether these claims or defenses are consistent with one another. So this argument is misdirected.

In support of its theory of waiver, MBS cites a decision from the District of Kansas, *Sithon Maritime Co. v. Holiday Mansion*, 983 F.Supp. 977 (D.Kan. 1997). This case does not support the proposition advanced by MBS. Denying a motion to amend as untimely, the court noted in dicta that previous claims of fraud were not pleaded with particularity. *Id.* at 991.

Anticipating dismissal of this claim, MBS argues for a stay, so that it may conduct discovery and then cure its third party complaint by amendment. As a general rule, if a party asserts that it can cure its defective complaint, a court ordinarily will grant leave to amend. *See In re Cerner Corp. Securities Litigation*, 425 F.3d 1079, 1086 (8th Cir. 2005). But where a party fails to adequately plead fraud under Rule 9(b), that party is not allowed to pursue discovery in order to remedy the complaint, and dismissal is appropriate. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 559-60 (8th Cir. 2006). The same is true here.

### 2. Capacity to Contract

The other theory for rescission is that the leases were executed by a representative of MBS who lacked this authority. Although MBS and ABM do not squarely present this issue in the context of rescission, their arguments are equally applicable here.

As mentioned beforehand, MBS alleges Couture was not authorized to execute the leases. By his signature, he indicated that his job title was "CFO." ABM contends that it believed Couture was the Chief Financial Officer of MBS and that, from its perspective, he had apparent authority to execute contracts on behalf of MBS.

MBS counters that, according to the allegations in its third party complaint, it had rejected a lease contract from ABM in December 2005, due to undisclosed irregularities in the handling of the contract. These concerns culminated with the February 10 letter, which informed ABM that only Gonzales and Smuck had authority to execute equipment leasing contracts on behalf of MBS. For these reasons, MBS argues, ABM knew or had reason to know that Couture was not authorized to execute the lease contracts.

Where a corporate agent enters into a contract without express authority from the corporation, the enforceability of the contract depends on the circumstances. If the other party either knew or had reason to know the agent lacked authority to bind the corporation, the contract is not enforceable. *Reynolds v. Prudential Ins. Co.*, 231 N.W. 615, 616 (Minn. 1930).

This principle is well illustrated by the decision of the Minnesota Supreme Court in *Truck Crane Service Co. v. Barr-Nelson, Inc.* 329 N.W.2d 824 (Minn. 1983). After some questionable transactions, a prime contractor sent a letter to one of its subcontractors, advising that a particular employee was not authorized to enter contracts. The letter further advised that transactions executed by this employee, on behalf of the prime, would not be honored. *Id.* at 827.

The court reasoned that this letter was sufficient to put the subcontractor on inquiry regarding the authority of not just that employee, but other employees of the contractor. The court also held that the subcontractor had the burden of due diligence to determine the authority of corporate agents. *Id.*; *accord*, *North Star Mutual Ins. Co. v. Zurich Ins. Co.*, 269 F.Supp.2d 1140, 1152-53 (D.Minn. 2003).

A countervailing principle is that, where the conduct of a corporation would lead another to reasonably believe that a corporate representative has power to bind the corporation, agency may be implied on a theory of apparent authority. But this determination must be based on the conduct of the *corporation* rather than that of its purported agent. The conduct and intent of the corporation may be inferred when the purported agent uses corporate resources, and in some circumstances, the corporation may be estopped from denying agency altogether. *Duluth Herald & News Tribune v. Plymouth Optical Co.*, 176 N.W.2d 552, 556-57 (Minn. 1970).

Taking reasonable inferences in favor of MBS, the third party complaint alleges that Couture was not authorized to execute the lease contracts, and ABM had reason to know that he lacked this authority. The complaint supplies sufficient grounds, therefore, to seek rescission on this theory. Because MBS has a claim for relief under this theory, but not for reasons of fraud or mistake, it is appropriate to sever the count for rescission and only grant dismissal in part.

ABM contends that Couture had apparent, if not actual, authority to execute the lease contracts. Because Couture had this authority, ABM argues, MBS cannot bring suit for rescission and dismissal is appropriate. But to maintain this argument, ABM improperly takes inferences from the third party complaint in its favor. The standard of review requires those inferences to be taken in MBS' favor. In that light, it is reasonable to conclude Couture did not have authority to execute the lease contracts. This factual dispute shows, at minimum, that MBS has a cause of action.

### 3. Ratification

ABM then argues, notwithstanding the fraud or capacity theories, that MBS waived relief because it ratified the lease contracts. If a contract is voidable and a party has a right to rescission, but that party does not exercise that right within a reasonable time, the party ratifies the contract and the right to rescission is waived. *In re Digital Resource, LLC*, 246 B.R. 357, 369 (B.A.P. 8th Cir. 2000).

The right to rescission does not arise until a party has knowledge of facts that would give it that right. Once a party acquires such knowledge, if that party continues to accept the benefits of the contract for a reasonable time, there is ratification and waiver. *In re Landmark Holding Co.*, 286 B.R. 377, 383 (Bankr. D.Minn. 2002); *Carpenter v. Vreeman*, 409 N.W.2d 258, 261-62 (Minn. App. 1987).

Taking all reasonable inferences in MBS' favor, the third party complaint states that it did not learn of the suspect lease contracts until fall 2006. Once it did, it stopped making payments under the contracts. These allegations are more than enough to suggest that it intended to avoid the lease contracts, and that it did not intend to accept the benefits of those contracts without objection. For these reasons, the third party complaint does not necessarily establish ratification or foreclose rescission.

ABM once again advances an argument that is based on inferences in its favor, even though the standard of review requires the contrary. This Court further notes, however, that even though ABM cannot seek dismissal a theory of ratification at this time, this result does not prevent it from asserting the argument later in this litigation.

### C.     Count III: Covenant of Good Faith and Fair Dealing

Leaving the count for breach of contract undisturbed, MBS next challenges the count for breach of the covenant of good faith and fair dealing. In support of this count, MBS alleges that the price terms under the lease contracts are unfair and unconscionable. ABM counters that, because the price terms are expressly stated in the leases, the implied covenant is not at issue.

These arguments are misdirected. The implied covenant of good faith and fair dealing bars one party from undertaking actions that unjustifiably hinder performance by the other party. *In re Hennepin County Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn. 1995). This covenant only relates to the performance of a contract. It does not involve concerns, such as unconscionable terms, that relate to the formation of a contract. *Cf.* Restatement (Second) of Contracts § 205 cmt. c.

The third party complaint lacks any allegations that ABM interfered with MBS' performance of the lease contracts. For this reason, MBS fails to state a claim for breach of the covenant of good faith and

fair dealing, and this count is appropriately dismissed. Any concerns about the fairness of the price terms are inapposite.

### D.     Count IV:  Unjust Enrichment

Regarding MBS' claim for unjust enrichment, ABM correctly states the general rule that this relief is not available where the rights of the parties are controlled by a valid contract. *U.S. Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981). ABM then argues that, because the lease contracts are valid, MBS cannot assert a claim for unjust enrichment.[6]

This argument is answered by Rule 8(e)(2), which provides in relevant part, "A party may also state as many separate claims or defenses as the party has regardless of consistency or whether based on legal, equitable, or maritime grounds." ABM may accordingly plead some claims that are premised on a valid contract and others that are not. The fact that these claims may be inconsistent with one another does not make them susceptible to a motion to dismiss for failure to state a claim. *See Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 536 (8th Cir. 1970).

This argument is yet another instance where ABM improperly takes inferences in its own favor. As noted previously, when the third party complaint is taken with reasonable inferences in MBS' favor, it shows that there was no valid or enforceable contract. For this reason, MBS has a claim for unjust enrichment, and dismissal of this claim is not warranted.

---

[6] The existence of a valid contract, by itself, does not foreclose a claim for unjust enrichment. If a contract is valid, but the rights of the parties are ambiguous, the remedy of unjust enrichment remains available. *Midwest Sports Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 268 (Minn. App. 1996).

### E.     Counts V, VI:  Fraud

To the extent ABM challenges the counts for fraud, those arguments were fully addressed in the discussion of rescission.  As noted at that point, MBS has not alleged the details of fraud with particularity under Rule 9(b).  For this reason, these counts are appropriately dismissed for failure to state a claim.

### F.     Count VII:  Reckless Misrepresentation

Assuming that Minnesota law recognizes reckless misrepresentation as a separate tort, it is generally characterized as a type of fraud.  *Florenzano v. Olson*, 387 N.W.2d 168, 177 (Minn. 1986) (Simonett, J., concurring specially); *cf. Zutz v. Case Corp.*, 422 F.3d 764, 770 (8th Cir. 2005) (holding that this tort is recognized under Minnesota law).  Like fraud, it occurs where a plaintiff relies on the misrepresentation of another party.  *Williams v. Tweed*, 520 N.W.2d 515, 517 (Minn. App. 1994); *see generally* 4 Minnesota Practice: CIVJIG § 57.10 (5th ed. 2007).

There can be little dispute, and the parties do not contest, that the particularized pleading requirements of Rule 9(b) also apply to this tort.  Because MBS has not adequately alleged fraud under this rule, its allegations of reckless misrepresentation likewise fail.

### G.     Count VIII:  Uniform Deceptive Trade Practices Act

The only other claim ABM challenges is for violation of the DTPA.  It argues that none of the allegations in the third party complaint show a "likelihood of confusion or of misunderstanding" that allow a claim under this statute.  MBS agrees that this phrase is controlling.  It asserts that this language is broadly construed to embrace a wide range of deceptive business practices, including those alleged in its complaint.

The DTPA permits action against a business that engages in deceptive trade practices.  In defining what constitutes such practices, the phrase "likelihood of confusion or of misunderstanding" appears in three

places, for conduct that

> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; . . . [or]
>
> (13) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

Minn. Stat. § 325D.44, subd. 1. Under Minnesota's version of the DTPA, only two published cases have examined the meaning of the phrase.

One is a bankruptcy decision from this District, *In re Simitar Entertainment, Inc.* 275 B.R. 331 (Bankr. D.Minn. 2002). It involved a retailer who challenged a distributor of music recordings, arguing that the distributor's conduct caused a likelihood of confusion about the nature of the recordings. *Id.* at 339. The court noted that, under the statutory language, it is not necessary to show actual confusion but only a likelihood of confusion. It found, among the acts that cause a likelihood of confusion, are those that may create a mistake about the identity of a product or its essential aspects. *Id.*

The other is the decision of this District in *Minnesota ex rel. Hatch v. Fleet Mortgage Corp.* 158 F.Supp.2d 692 (D.Minn. 2001). This case involved a telemarketing firm that, in the course of solicitations, acquired personal data which it then sold to third parties. Because persons contacted by the firm were not informed their data would be sold to others, the court described this practice as a material omission. *Id.* at 696. Taking a broad approach to the term "likelihood of confusion or misunderstanding," the court

determined that an omission may qualify for this term, and refused to dismiss for failure to state a claim. *Id.* at 697.

The third party complaint alleges that ABM delivered photocopiers with different serial numbers than those promised in the leases. It also suggests a material omission, as ABM failed to disclose that the leasing cost for the photocopiers was about ten times their retail price.

Under the standard of *Simitar Entertainment*, it is possible to conclude that the concern about the serial numbers is enough to show a likelihood of confusion about the identity of the photocopiers or their essential aspects. The material omission of reasonable pricing information may also provide MBS with a theory under *Fleet Mortgage Corp.*[7] Either theory is sufficient to state a claim and so it is not appropriate to dismiss this count.

### H. Remedy

Although a dismissal for failure to state a claim is ordinarily with prejudice, where the failure is due to the omission of material facts from the complaint, a court has discretion to dismiss without prejudice. *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990).

This Court has determined dismissal is appropriate for the claims that are founded on fraud and breach of the covenant of good faith and fair dealing. In both areas, the dismissal is chiefly due to MBS' omission of material facts from the complaint. This Court finds it appropriate, under these circumstances,

---

[7] This analysis may appear to be inconsistent with the prior determination that the purported omissions of ABM do not support a claim for fraud. But the pleading requirements for fraud do not apply to claims under the DTPA, and a wider range of conduct is actionable under the DTPA than for fraud. *See Fleet Mortgage Corp.*, 158 F.Supp.2d at 966-67.

to dismiss without prejudice. Should MBS acquire facts that allow it to revive its claims, it may then do so.

### I.     More Definite Statement

Assuming that it does not prevail on its motion to dismiss, ABM alternatively asks for a more definite statement of the third party complaint under Rule 12(e). The rule provides that where a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."

When examining whether a more definite statement is required under Rule 12(e), the only question is whether it is possible to frame a response to the pleading. *See Century '21' Shows v. Owens*, 400 F.2d 603, 607 (8th Cir. 1968). This inquiry focuses on the allegations in the complaint, not the claims. Thus a more definite statement is appropriate where the allegations are so vague or unintelligible that no reasonable response can be expected. *See Swierkewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see also Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F.Supp. 638, 644 (D.Minn. 1996).

The allegations in the complaint are reasonably precise and understandable. Even though ABM objects to the lack of detail, in its answer to the third party complaint, it framed a response and admitted or denied the allegations. For these reasons, a more definite statement is not needed here.

### III.    CONCLUSION

Because MBS does not make particularized allegations about fraud, it does not state claims that are founded on this theory. So its claims for fraud and negligent misrepresentation, and its suit for rescission to the extent it relies on this theory, are appropriately dismissed. Because MBS does not allege that ABM

interfered with its performance of the leases, it also does not state a claim for breach of the implied covenant of good faith and fair dealing.

To the extent MBS founds its suit for rescission on incapacity, it has adequately alleged that a representative of ABM did not have authority to execute the leases, and dismissal of this matter is not appropriate. Its allegations are also sufficient to establish a claim for unjust enrichment. As the conduct of ABM potentially caused a likelihood of confusion or misunderstanding, MBS also has a claim for violation of the DTPA.

Consistent with this analysis, this Court concludes that ABM's motion to dismiss should be granted in part and denied in part, and that the inadequate claims be dismissed without prejudice.

## IV.  RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. ABM's motion to dismiss (Doc. No. 16) be **GRANTED IN PART AND DENIED IN PART.**

2. The following claims in the third party complaint be **DISMISSED WITHOUT PREJUDICE.**

    a. Counts III, V, VI, and VII in their entirety.

    b. Count I only to the extent it is founded on a theory of fraud.

Dated this 6th day of September, 2007.              s/Jeanne J. Graham

                                                                    JEANNE J. GRAHAM
                                                                    United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by September 25, 2007. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court is not required, under 28 U.S.C. § 636, to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.